UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD R. HULSE,

       Plaintiff,                        CIVIL ACTION NO. 08-11154

   v.                                    DISTRICT JUDGE DAVID J. LAWSON

COMMISSIONER OF              MAGISTRATE JUDGE VIRGINIA M. MORGAN
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action for judicial review of the defendant's decision denying plaintiff's application for social security disability benefits. For the reasons discussed in this report, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying Title II benefits be affirmed.

Plaintiff filed the instant application for Title II and SSI (supplemental security income) benefits in June, 2004. After working in the plumbing industry for 23 years, he had a stroke in 1988. He filed applications for benefits then which were denied (without a hearing before an ALJ) and the issue of benefits prior to December 22, 1994, the date of the administrative denial, was deemed closed. Plaintiff suffered one additional major stroke in 2004 and was found to meet the Listing 11.04. (Tr. 196) The agency granted benefits to plaintiff on his SSI claim as of the day of the instant application, but the ALJ denied Title II benefits because of the lack of any

medical evidence for the period June 1, 1998 through March 31, 2000, the date he was last insured.[1] (Tr. 15) Thus, the relevant period for the court's review is June 1, 1998 through March 31, 2000.

The issue before the court is whether to affirm the Commissioner's determination. In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938). The scope of our review is limited to an examination of the record only. We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence. Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months. 42 U.S.C. §

---

[1] The Nurse/Doctor Telephone Contact notes from the Agency state that there is "not sufficient information prior to last stroke in 2004." If plaintiff were limited to sedentary work in July, 2003 when he turned 50 or meets or equals [the Listings] prior to July, 2003, then he would be entitled to Title II benefits. (Tr. 196) This would still not help him because his insured status expired in 2000.

423(d)(1)(A); 20 C.F.R. § 416.905(a).  If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy.  Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

## BACKGROUND

**Medical Records**

   **1994**

   Plaintiff was denied benefits in 1994.  The medical records show that plaintiff has been treated for epilepsy with seizures since age 13. (Tr. 106-107)  In 1994, he developed severe right leg pain followed within a few days by severe right foot pain.  When seen at the hospital it was diagnosed as a popiteal artery occlusion, possibly thrombotic but embolus not totally occluded. (Tr. 106)  The history taken at that time indicates that plaintiff was weaned from an anticonvulsant at age 15 and had no seizures until 1988 at age 35.  That seizure occurred while he was in bed and two weeks later he had his stroke.  When seen in 1994, the symptoms were almost fully resolved but still had mild clumsiness on the left side (he is left hand dominant).  He continues to have depression for which he treats with Dr. Syed. (Tr. 107)

   **2004**

   Plaintiff was granted SSI benefits in 2004.  Records from 2004 show that plaintiff presented with severe headache, vomiting, and left sided weakness, diagnosed as CVA and right internal carotid artery stenosis.  (Tr. 120-122)  Dr. Vargas is his primary treating physician.  In

addition to the right sided parietal CVA in 1988 he also had a right superficial femoral artery occlusion in 1990, depression and possible migraines. (Tr. 120)  Duplex of the carotids showed 60 to 80 per cent stenosis; the MRI showed old parietal stroke and new posterior stroke. (Tr. 120)  It was recommended that plaintiff undergo an endarterectomy but he had no insurance.  He was advised to stop smoking.  (Tr. 120)

In a phone contact, Dr. Vargas reports that plaintiff had a stroke in 1988, mini-strokes in 1998 and 1999, a fairly major stroke June 27, 2004, leaving him with balance problems, right eye problems, left leg affected, left arm weak, depression and stress.  (Tr. 150)

In October, 2004, plaintiff was examined psychologically by Katherine M. Dollard, Psy.D. (Tr. 152)  In her summary, Dr. Dollard notes plaintiff's past history of multiple strokes and history of epilepsy.  He appeared to be quite depressed.  (Tr. 157)  Plaintiff was advised that with the first stroke, the emotional center of his brain was damaged during the first stroke.  He reported having short-term memory problems, confusion, and personality changes with increased agitation and paranoia.  He has had difficulty maintaining employment since the first stroke.  Dr. Dollard opined that plaintiff could benefit from a full neurological evaluation to determine areas of cognitive impairment.  (Tr. 158)

Dr. Newhouse conducted a review and prepared the Psychiatric Review Technique and found Organic Mental Disorders (12.02) and Affective Disorders (12.04) as well as a cognitive disorder not otherwise specified.  (Tr. 159-160)  In addition, he had moderate recurrent major depression.  (Tr. 162)  There were mild restriction of daily activities and difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence

and pace. (Tr. 169) The consultant's notes indicate that "we have insufficient psych from date of onset to date last insured." (Tr. 171) However, he noted that the state examiners' findings included a GAF of 47, major depressive disorder, cognitive issues, and guarded prognosis. Plaintiff loses his temper more than he should, has feelings of worthlessness, few close friends, and a flat affect. *Id.* Plaintiff was found to be moderately limited in terms of ability to remember and understand detailed instructions, ability to carry out such instructions, and to maintain concentration and attention for extended periods. (Tr. 172) Evaluation of functional capacity showed some physical limitations, difficulty with complex tasks, but that he retained the ability to do simple tasks on a sustained basis. (Tr. 174)

Dr. Bielawski of Michigan Medical Consultants saw plaintiff in November, 2004. Dr. Bielawski reports that plaintiff's first stroke occurred in 1998.[2] (Tr. 175-178) Plaintiff reports that he was in a wheelchair for four months, with residuals of left hemiparesis in his arm and leg. He also had blood clots. (Tr. 175) On examination, the left arm was smaller than the right. (Tr. 176) His cranial nerves appeared to be abnormal. His left eye had palpebral fissure wider than right. He cannot shrug his shoulders on left as much as on right. His tongue deviates to the right. Motor strength and muscle tone are normal. There was atrophy of the left thigh and other problems with the left leg as well as dysdiadochokinesis of the left hand, Romberg testing was positive. Plaintiff walked with a slight limp without use of assistive device. (Tr. 177) His

---

[2]This appears to be a typographical error as the correct date of 1988 is contained in the associated RFCA. (Tr. 178)

balance was significantly impaired and he should not be on a job that would injure him if he lost balance.

**Medical Records Between 1994 and 2004**

### 1996-1997

In 1996, plaintiff was seen at St. John's Regional Health Center in Springfield Missouri where he was living at the time. (Tr. 197) On physical examination by Dr. Isaacs, plaintiff was found to have major depression and no apparent residuals from the 1988 stroke. *Id.* He received extensive inpatient treatment in August and September, 1996. (Tr. 199-299) In his psychiatric evaluation form, it is noted that he had eight months of rehabilitation after the 1988 stroke. Memory seemed intact but there were questions about his judgment and whether his thought processes were rational. (Tr. 204) His affect was depressed, tearful, angry, and wants someone to make him feel better. He was continued with inpatient psychiatric treatment, group therapy, and adjunctive therapies emphasizing stress management. (Tr. 205) Plaintiff continued with supportive psychiatric services in an adult day care treatment setting. (Tr. 303-304) He has treated with Dr. Jenkins since September 1996 and was on Bupropion and Trazodone. (Tr. 315) He attempted suicide August 1996 and a second attempt was made a short time later. (Tr. 315) Plaintiff was with his third wife Karen of six years who supports him by working at McDonalds. (Tr. 316) His Weschler Memory Scale yielded an average score and no figure drawings on the Bender Gestalt were appreciably distorted. (Tr. 318) At that time, it was the examiner's opinion that plaintiff needed encouragement to see that he was capable of gainful employment, although he may not be able to do what he did before. (Tr. 319)

**2001**

Plaintiff was seen at the Burrell Behavioral Health of Springfield, Missouri in February, 2001. (Tr. 305)  Plaintiff was noted to be living with his wife and son and his symptoms have worsened over the past several months.  He seldom leaves the house and feels very anxious when he is outside the home.  He does not sleep well and has a great deal of hopelessness.  (Tr. 305)  The diagnoses were major depressive disorder, panic disorder with agoraphobia, severe social network and occupational issues, and a GAF of 35.  He admitted to suicide ideation and was immediately referred to the Adult Crisis Stablization Unit.  (Tr. 307)  The psychiatric evaluation of that date indicates that plaintiff slipped back into major depression after six months of leaving treatment at Burrell.  (Tr. 309)  He was not using alcohol or street drugs.  He was noted to have mild left sided weakness secondary to the earlier stroke.  He was depressed with a sad and fearful affect.  (Tr. 311)  The GAF was assessed as 46.  (Tr. 312)  The closing summary report indicates that plaintiff is on Elavil and Seldinafil.  He is noted to be stable, well nourished, with stable mood.  He will take his medication as prescribed, report problems with the medications, and schedule regular follow up visits.  (Tr. 300-301)  He was returning to Michigan to be closer to his family there.  *Id.*  He continued to have symptoms of social phobia, afraid to do the smallest of activities outside of the home.  He was referred to a caseworker in Michigan.  (Tr. 302)

**ANALYSIS**

Plaintiff alleges that be became disabled  June 1, 1998, as a result of an earlier major stroke in 1988 accompanied by resulting depression and anxiety.  (Tr. 337, 18)  In 2004, he had

another major stroke.[3]  He is a high school graduate with some training as an auto mechanic (Tr. 101) and past work as a plumbing estimator, handyman, and janitor.  (Tr. 70)  The defendant found that plaintiff had not engaged in substantial gainful activity from his alleged onset date through the date he was last insured [March 31, 2000].  (Tr. 17)  The defendant also found that plaintiff had residuals from a CVA (stroke) in 1988 (ten years prior to the alleged onset date) and had depression but that plaintiff retained the residual functional capacity to perform a restricted range of light work.  If plaintiff is to be entitled to Title II benefits, he must be found to be disabled prior to March 31, 2000, the date he is last insured.  At that time, he still was a younger individual.  The difficulty is that there are no medical records for that period.  The last records from 1996 to 1997 indicate that plaintiff could work.  Even if plaintiff were found disabled in February 2001 when he was treated at Burrell, that could not help him because his insured status expired almost one year earlier.

The ALJ found certain of plaintiff's restrictions supported by the medical evidence and included those in the hypothetical question to the vocational expert.  The defendant further found that these restrictions precluded plaintiff's past work and that he had no transferable skills.  Proceeding to step five and based on the VE's response, the ALJ concluded that there were other jobs that existed in significant numbers that plaintiff could perform.  (Tr. 20)  In the hypothetical, the ALJ asked the VE to assume that a person like plaintiff who could lift up to 20 pounds occasionally, ten pounds frequently, stand/sit alternatively at will, no climbing ladders or

---

[3] The psychological evaluation summarizes plaintiff's medical history as including two major and two mini-strokes. (Tr. 157-158)

scaffolds, kneeling, crouching or crawling but could occasionally climb ramps or stairs and stoop. In addiiton, the person had no restrictions on his dominant right hand[4] and could frequently, but not constantly, perform work tasks that required gross manipulation. The person could not perform tasks requiring concentrated use of moving machinery or exposure to unprotected heights and was limited to simple, routine, repetitive tasks. (Tr. 18) The vocational expert said that he could work as a janitor (Tr. 348 to 354) and identified assembler (9000 jobs regionally), inspector (4700), and stock clerk (3100) as light jobs such a person could perform. If such a person, due to a combination of medical conditions and mental disorders, were unable to engage in sustained work activity for a full 8 hour day on a regular and consistent basis, then such a person could not work. (Tr. 353) Further, the VE noted that generally the acceptable absence level is one day per month (if it is unpredictable) and two breaks a day for 15 or 20 minutes and a lunch break of 20 to 45 minutes. *Id.*

     Plainitiff alleges that the ALJ did not properly evaluate the medical records and so propounded an inaccurate hypothetical to the vocational expert. The defendant found that plaintiff had a stroke in 1988 and resulting significant depression. (Tr. 18) The ALJ concluded that plaintiff had mild impairment of his ability to perform activities of daily living and maintaining social functioning and had only a mild impairment in persistence, concentration, and pace. (Tr. 19) The plaintiff also submits that the ALJ does not discuss the Psychiatric Review Technique form completed by Dr. Newhouse which indicates that plaintiff, "from 06-01-1998 to

---

[4] As plaintiff points out, this must be a scrivener's error as plaintiff's problem is left sided and he is left hand dominant.

10-27-2004" suffers moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 159)  But Dr. Newhouse found that plaintiff retained the residual functional capacity to perform simple tasks on a sustained basis, so the absence of discussion of the report does not seem to buttress plaintiff's case.  The ALJ found that plaintiff had severe impairments before the date last insured but that he could perform a restricted range of light work.

Since his first stroke, plaintiff has had difficulties maintaining employment.  He was making about $20,000 to $40,000 per year from 1973 until his stroke in 1988. (Tr. 46)  After that, his income ranged from $20,000 down to $12,000 until 1993, when no income is reported and afterward it is a few hundred to a few thousand dollars a year.  (Tr. 46)  As of 1998, he has no income at all.  *Id.*  This is some support for his case but at the step four level, it is still his burden to establish disability.  Unfortunately for plaintiff, there is no medical evidence in the record from which the court can find that the ALJ erred in determining that prior to March 2000 plaintiff could work.

Accordingly, it is recommended that defendant's motion be granted, plaintiff's denied, and the decision denying Title II benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991); <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

  Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

        s/Virginia M. Morgan
        Virginia M. Morgan
        United States Magistrate Judge

Dated: February 5, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on February 5, 2009.

        s/Jane Johnson
        Case Manager to
        Magistrate Judge Virginia M. Morgan